

Case 4:21-cv-02165   Document 1-2   Filed on 07/02/21 in TXSD   Page 2 of 15

5/21/2021 8:43 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 53671765
By: D Burton
Filed: 5/21/2021 8:43 AM

CAUSE NO. _____

| | | |
|---|---|---|
| **DONALD BRATTON AND** § | | **IN THE DISTRICT COURT OF** |
| **DONALD MALLARD, INDIVIDUALLY** § | | |
| **AND AS REPRESENTATIVE OF THE** § | | |
| **ESTATE OF JERVIE MALLARD, SR.,** § | | |
| **DECEASED,** § | | |
| *Plaintiffs,* § | | |
| § | | |
| VS. § | | **HARRIS COUNTY, TEXAS** |
| § | | |
| **UNION PACIFIC RAILROAD** § | | |
| **COMPANY, PASTOR, BEHLING &** § | | |
| **WHEELER, L.L.C., AND** § | | |
| **ENVIRONMENTAL RESOURCES** § | | |
| **MANAGEMENT SOUTHWEST, INC.,** § | | |
| *Defendants*. § | | **_____ JUDICIAL DISTRICT** |

## PLAINTIFFS' ORIGINAL PETITION AND RULE 193.7 NOTICE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Donald Bratton and Donald Mallard, Individually and as Representative of the Estate of Jervie Mallard, Sr. (collectively "Plaintiffs"), files this Plaintiffs' Original Petition and Rule 193.7 Notice against Defendants, Union Pacific Railroad Company, Pastor, Behling & Wheeler, L.L.C., and Environmental Resources Management Southwest, Inc. (collectively "Defendants"), and would show the Court as follows:

## I.
## DISCOVERY LEVEL

1.  Plaintiffs intend to conduct discovery under Level III of TEXAS RULES OF CIVIL PROCEDURE 190.4.

## II.
## PARTIES

2.      Plaintiff, Donald Bratton, currently resides in Harris County, Texas, is diagnosed with cancer, and is a long-time resident of Kashmere Gardens and Fifth Ward, living at 1713 Dan Street, Houston, Texas 77020 for over the past 20 years.

3.      Plaintiff, Donald Mallard, currently resides in Harris County, Texas, is diagnosed with cancer, and was a long-time resident of Kashmere Gardens and Fifth Ward, living with his immediate and extended family at 2612 Amboy Street Houston, Texas 77020 for over the past 20 years. Jervie Mallard, Sr. ("Decedent") died of cancer and was a long-time resident of Kashmere Gardens and Fifth Ward located in Harris County, Texas. Plaintiff, Donald Mallard, is the surviving biological son of Jervie Mallard, Sr. and is entitled to bring this action under the TEXAS WRONGFUL DEATH ACT and TEXAS SURVIVAL STATUTE.

4.      Defendant, Union Pacific Railroad Company ("Union Pacific"), is a foreign for-profit corporation conducting business in Harris County, Texas. Union Pacific may be served with process through its registered agent, CT Corporation System, located at 350 North Saint Paul Street, Suite 2900, Dallas, Texas 75201, or wherever it may be found. **Immediate issuance of citation to the undersigned is requested.**

5.      Defendant, Pastor, Behling & Wheeler, L.L.C. ("PBW"), is a domestic for-profit limited liability company with its principal place of business at 2201 Double Creek Drive, Suite 4004, Round Rock, Texas 78664. PBW may be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, located at 211 East 7th Street, Suite 620, Austin, Texas 78701, or wherever it may be found. **Immediate issuance of citation to the undersigned is requested.**

6.      Defendant, Environmental Resources Management Southwest, Inc. ("ERM"), is a domestic for-profit limited liability company with its principal place of business at City Centre Four, 840 West Sam Houston Parkway North, Suite 600, Houston, Texas 77024. ERM may be served with process through its registered agent, Cogency Global Inc., located at 1601 Elm Street, Suite 4360, Dallas, Texas 75201, or wherever it may be found. **Immediate issuance of citation to the undersigned is requested.**

### III.
### JURISDICTION & VENUE

7.      This Court has jurisdiction over Defendants because Defendants, previously and currently, do business in the State of Texas, have continuing contacts with the State of Texas, and are amenable to service in the State of Texas. The amount in controversy exceeds the minimal jurisdictional limits of this Court.

8.      Harris County is the proper county of venue because it is where all or a substantial part of the events giving rise to the claim occurred. TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1).

### IV.
### FACTS

9.      This case is one of the largest instances of environmental racism in the history of the United States.

10.     Plaintiffs and Decedent were long-time residents of the Kashmere Gardens neighborhood located in Houston, Texas. It has now become evident that Defendants knowingly contaminated the residential neighborhoods of Kashmere Gardens and Fifth Ward with creosote and toxic chemicals. The source of the contamination was Union Pacific's Englewood Rail Yard, located at 4910 Liberty Road, Houston, Texas 77026 ("the Rail Yard"). The contamination is ongoing and continuous.

11.     Plaintiffs and Decedent lived and worked in the community directly affected by the contamination of creosote and toxic chemicals. As a result of the exposure to creosote and toxic chemicals used, stored, managed, and improperly dumped at the Rail Yard, Plaintiffs and Decedent suffered physical injuries, including cancer and death.

12.     Creosote is a mixture of toxic chemicals, which includes pentachlorophenol, benzene, toluene, dioxin, and polycyclic aromatic hydrocarbons. The International Agency for Research on Cancer ("IARC"), Environmental Protection Agency ("EPA") and Center for Disease Control ("CDC") found creosote to be a known and probable human carcinogen linked directly to myeloid leukemia and cancer of the lungs, bronchus, esophagus, larynx, urinary bladder, nose, and nasal cavity.

13.     Houston Wood Preserving Works was a creosote wood treatment plant operated by Union Pacific, from at least 1950 to 1985, located in the Rail Yard. For decades, millions of gallons of creosote were heated in open air vats and ditches, then dumped at the Rail Yard which directly caused the contamination of Kashmere Gardens and Fifth Ward.

14.     Defendants provided no warnings to Plaintiffs and Decedent about the dangerous levels of creosote contaminating the air, water, and soil of Kashmere Gardens and Fifth Ward. No fences were built to keep children from playing in or around the contaminated ground and water. No barriers were constructed or recommended to prevent storm drainage ditches from carrying creosote and toxic chemicals throughout Kashmere Gardens and Fifth Ward. Defendants made no effort to remediate, mitigate, and/or prevent the contamination of Kashmere Gardens and Fifth Ward.

15.     For years, Union Pacific and its consulting geologists, ERM and PBW, failed to properly test, remediate, and/or warn of the real risks of creosote exposure to the residents of Kashmere

Gardens and Fifth Ward. Soil samples and monitoring wells in the Rail Yard show Kashmere Gardens and Fifth Ward continue to test positive for unsafe levels of creosote and toxic chemicals. ERM and PBW Defendants' delays and half measures to remediate this problem directly caused the continued spread of an underground plume of creosote sludge known as a dense non-aqueous phase liquid ("DNAPL"). The heavy nature of DNAPL causes it to sink into the ground and spread outward to the surrounding groundwater, soil, and air far beyond the property line of the Rail Yard. This process is ongoing and continuous.

16.  Defendants refuse to take or develop any corrective measures to mitigate the growing plume of creosote contaminating Kashmere Gardens and Fifth Ward. To this day, drainage ditches, soil, and wells continue to test positive for creosote and toxic chemicals above levels considered safe for humans. In quite possibly one of the largest cases of environmental racism in the United States, and even with clear evidence of a cancer cluster in Kashmere Gardens and Fifth Ward, Defendants have yet to admit, design, or take any measures to eliminate contamination or adequately warn residents of the specific health hazards. Defendants' policies, practices, and procedures developed for this site, with unprecedented levels of cancer-causing substances, equates to nothing less than a slow, painful, and deadly lynching of the predominately African American and/or traditional lower income residents of Kashmere Gardens and Fifth Ward. However, Defendants did not discriminate based on age, as schools, playgrounds, churches, local "hangouts", school bus routes, and stops were equally contaminated and allowed to exist mere feet from this dangerous toxic site. Defendants warned no one, as entire families were slowly "taken out" by rare forms of cancers directly linked to the deadly substances festering on this site for years and until this very day. This was all confirmed by recent reports of statistically significant cancer

Plaintiffs' Original Petition and Rule 193.7 Notice

5

clusters. Even more, children living in Kashmere Gardens and/or Fifth Ward are six times more likely to develop leukemia.

17.     Although the extent of the contamination has been under-reported and/or purposefully ignored for over 20 years, this site could represent the largest contamination field in a densely populated area in the history of the United States. Defendants' actions show a level of environmental racism previously unseen in this nation.

18.     To this day, Defendants admit nothing, do nothing, prevent nothing, and protect no one from these cancer-causing substances. Instead, Defendants embark on misleading add campaigns fused with Orwellian paid for "science doublespeak," and file endless barrages of dilatory and frivolous motions and appeals only to delay justice and truth to the residents of Kashmere Gardens and Fifth Ward, who are sick and dying at unprecedented rates. "Justice is what love looks like in public" and "you must let the suffering speak if you want to hear the truth." Defendants' acts and omission show no love for the residents of Kashmere Gardens and Fifth Ward. Defendants' filing of dilatory motions and appeals without basis, or even considering the possibility of dangerous contamination, shows that Defendants have no interest in hearing the truth. There are at least 350 similarly situated contaminated sites throughout the United States that have shared the same treatment by these Defendants.

## V.
## DISCOVERY RULE APPLICABILITY

19.     For most adult cancers, a period of ten to forty years can elapse between the initial exposure to a cancer-causing agent and the development of a clinically diagnosable case of cancer. The statute of limitations does not begin until Plaintiff knows or should have known of Defendants' wrongful acts and the resulting injury. An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period regardless of due diligence.

Plaintiffs' and Decedent's injuries took years to develop, and even when the symptoms did manifest, physicians did not detect the link between their injuries and the hazardous chemicals. As a result, despite due diligence, Plaintiffs' and Decedent's injuries were unlikely to be discovered within the prescribed limitations period.

## VI.
## NEGLIGENCE

20.     Defendants have multiple duties to not expose Plaintiffs and Decedent to dangerous levels of creosote and toxic chemicals. Defendants breached these duties and were negligent in one or more of the following ways:[1]

   a. Failing to warn of the health hazards associated with creosote and toxic chemicals used, stored and dumped at or near the Rail Yard;

---

[1] *See* Exhibit A. Certificate of Merit authored by Dr. Phillip Bedient which expressly states the negligent acts and omissions of Defendants PBW and ERM. Although, the Plaintiffs contend the related statutes and case law specifically exclude the field of Geo-Science, defendants have contended that since the principals of the company are engineers a certificate of merit is required. Out an abundance of caution, Plaintiffs offer the certificate of merit authored by Dr. Phillip Bedient to specifically address this contention by the defendants. In ***Melden & Hunt, Inc. v. East Rio Hondo Water Supply Corporation***, 520 S.W.3d 887 (Tex. 2017), the court held that a certificate of merit need not address each element of a cause of action. Instead, a certificate of merit need only state the professional's errors or omissions and their factual basis sufficiently to demonstrate that the complaint was not frivolous. *See Dunham Eng'g,* 404 S.W.3d at 795 (noting that "at the certificate-of-merit stage, before discovery and before other dispositive motions are available, the plaintiff is not required to fully marshal his evidence") (internal quotations omitted); *CBM Eng'rs,* 403 S.W.3d at 346 (noting that statute does not require a plaintiff to marshal his evidence or provide the full range of information that the defendant is entitled to obtain through formal discovery); *M–E Eng'rs,* 365 S.W.3d at 504 (noting that statute "reflects a legislative goal of requiring merely that plaintiffs make a threshold showing that their claims have merit"). The affiant need not address each element of the plaintiff's causes of action. On the contrary, *Melden & Hunt* confirms that the "factual basis" required is merely that which underlies the asserted professional error or omission to which the affiant attests; the affiant need not "address the elements of the plaintiff's various theories or causes of action"31 or "operative facts other than the professional errors or omissions that are the focus of the statute." In sum, the text of Section 150.002, Subsection (b) requires that the expert certify that the defendant committed the professional errors or omissions being alleged and provide the "factual basis" for that opinion.39 The "factual basis" need not be in the form of admissible or competent evidence; such requirements operate at later junctures in the proceedings, not in regard to the threshold showing of merit required under Chapter 150. Neither *Melden & Hunt* nor the *Levinson Alcoser* concurrence would impose that standard or imply that it is required. *See also Jaster-Quintanilla & Assocs. v. Prouty*, 549 S.W.3d 183, 187 (Tex. App.—Austin 2018, no pet.). Practitioners have been given a tremendous amount of insight into the Texas Supreme Court's interpretation of the Certificate of Merit Statute. One would hope this guidance will cut down on the abundance of litigation over the statute's requirements the Texas court system has seen in recent years.

The "factual basis of each such claim" was in the original statute and refers to the "negligence, if any, or other action, error or omission" and simply requires the expert to include in the certificate a statement regarding the errors the expert believes occurred with respect to the professional services at issue.

Plaintiffs' Original Petition and Rule 193.7 Notice

b. Failing to safely use, store, and dump creosote and toxic chemicals known to be hazardous to human health;

c. Failing to take reasonable steps to prevent and/or mitigate air, soil, and water contamination caused by creosote and toxic chemicals known to be hazardous to human health;

d. Failing to properly monitor and test for air, soil, and water contamination caused by creosote and toxic chemicals known to be hazardous to human health;

e. Failing to notify Plaintiffs and Decedent of air, soil, and water contamination caused by creosote and toxic chemicals known to be hazardous to human health;

f. Failing to disclose the full extent and nature of air, soil, and water contamination at or near the Rail Yard in close proximity to Plaintiffs and Decedent;

g. Failing to employ, train, and supervise employees on the safe handling, storage, use and containment of creosote, toxic chemicals, and waste known to be hazardous to human health;

h. Failing to protect Plaintiffs and Decedent from the harmful effects of exposure to creosote and toxic chemicals;

i. Failing to prevent creosote and toxic chemicals from permeating ground water and creating a creosote DNAPL beneath residential properties;

j. Failing to take timely and reasonable steps to contain the creosote DNAPL and mitigate the risks to human health posed by the creosote DNAPL;

k. Failing to warn of physical injury caused by soil and water contamination caused by creosote and toxic chemicals known to be hazardous to human health;

l.  Failing to obtain reliable or adequate meteorological and geological surveys to ensure creosote and toxic chemicals would not contaminate air, soil, and water;

m.  Failing to obtain reliable or adequate meteorological and geological surveys to reasonably evaluate the risk of air, soil, and water contamination by creosote and toxic chemicals;

n.  Failing to prevent Plaintiffs, Decedent, and the general public from coming into contact with creosote and other toxic chemicals, including, but not limited to, failing to implement safety barriers and security measures to prevent public access to creosote and toxic chemicals at or near the Rail Yard;

o.  Causing, allowing, and permitting the collection, handling, storage, processing, and disposal of industrial solid waste in such a manner, so as to cause:

   1) The creation and maintenance of a nuisance; or

   2) The endangerment of the public health and welfare; and

p.  Causing, allowing, and permitting the collection, handling, storage, processing, and disposal of hazardous waste in such a manner, so as to cause:

   1) The creation and maintenance of a nuisance; or

   2) The endangerment of the public health or welfare.

21.  Plaintiffs and Decedent were exposed to dangerous levels of creosote and toxic chemicals that came from the Rail Yard. Plaintiffs' and Decedent's exposure levels were comparable to, or greater than, the exposures in published and peer reviewed studies linking cancer to creosote and toxic chemicals. Plaintiffs' and Decedent's exposure to creosote and toxic chemicals occurred before the onset of injury. The timing of Plaintiffs' and Decedent's onset of injury was consistent with that experienced by those in published and peer reviewed studies. Defendants' acts and

omissions proximately caused Plaintiffs' and Decedent's damages for bodily injury, wrongful death, and survival claims and the statements made herein relate solely to those categories of recovery.[2] This lawsuit specifically excludes any claims for property damage.

## VII.
## RESPONDEAT SUPERIOR

22. Defendants are liable for the torts committed by their employees during the course and scope of the employees' employment. Defendants' employees were negligent and grossly negligent while in the course and scope of their employment with Defendants (and in furtherance of Defendants' businesses). Defendants' employees and representatives had a general duty to exercise reasonable care in performing their work. Defendants' employees, however, failed to exercise the requisite standard of care, were negligent and were grossly negligent. As a result, Defendants are liable for all injuries sustained by Plaintiffs and Decedent.

## VIII.
## PERSONAL INJURY DAMAGES

23. Plaintiffs request the following damages be considered, separately and individually, to determine the sum of money that will fairly and reasonably compensate them over $1,000,000:

   a. Past medical expenses;

   b. Future medical expenses;

   c. Past pain and suffering;

   d. Future pain and suffering;

   e. Past mental anguish;

   f. Future mental anguish;

   g. Past physical impairment;

---

[2] No motion for dismiss or anti-SLAPP motion applies to the claims made herein. TEX. CIV. PRAC. & REM. CODE § 27.010(A)(3)

Plaintiffs' Original Petition and Rule 193.7 Notice

  h. Future physical impairment;

  i. Past disfigurement;

  j. Future disfigurement;

  k. Past lost wages and pecuniary loss; and

  l. Future lost wages and pecuniary loss.

## IX.
## WRONGFUL DEATH DAMAGES

24. Plaintiff, Donald Mallard, requests the following damages be considered, separately and individually, to determine the sum of money that will fairly and reasonably compensate him for the loss of Decedent over $1,000,000:

  a. Plaintiff's pecuniary loss from Decedent's death, including loss of care, maintenance, support, services, advice, counsel, and contributions of pecuniary value that he would, in all reasonable probability, have received from Decedent during his lifetime;

  b. The mental anguish, grief, and sorrow Plaintiff suffered in the past and will continue to suffer in the future as a result of Decedent's death;

  c. Plaintiff's loss of society and damage to the parent-child relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support and happiness;

  d. Plaintiff's loss of inheritance from Decedent who, in reasonable probability, would have added to the estate had he died a natural death; and

  e. Attorney's fees and court costs.

# X.
# SURVIVAL DAMAGES

25. Plaintiff, Donald Mallard, as Representative of the Estate of Jervie Mallard, Sr., requests the following damages be considered, separately and individually, for the purpose of determining the sum of money that will fairly and reasonable compensate the Estate over $1,000,000:

   a. The physical, conscious pain and suffering Decedent suffered prior to death as a result of the injuries caused by Defendants;

   b. The mental anguish Decedent suffered prior to death as a result of the injuries he sustained;

   c. The amount of reasonable medical expenses necessarily incurred as a result of Defendants' negligence;

   d. The disfigurement suffered prior to death as a result of the injuries he sustained;

   e. The physical incapacity and impairment suffered by Decedent until death;

   f. The funeral and burial expenses incurred as a result of Decedent's death;

   g. The physical incapacity and impairment suffered by Decedent until death; and

   h. The reasonable amount of past wages from the date of Decedent's death to present and the loss of future income reasonably expected during Decedent's lifetime.

# XI.
# GROSS NEGLIGENCE AND EXEMPLARY DAMAGES

26. Defendants had actual knowledge of the proven harmful and cancer-causing effects of creosote and toxic chemicals to humans. Despite this knowledge, Defendants knowingly contaminated the soil, air, and water of Kashmere Gardens and Fifth Ward, which caused personal injury to Plaintiffs and death to Decedent. Defendants had a duty and responsibility to act (or not act) in ways that involve an extreme degree of risk to Plaintiffs and Decedent, considering the probability and magnitude of the potential harm to Plaintiffs and Decedent. Defendants had actual,

Plaintiffs' Original Petition and Rule 193.7 Notice

subjective awareness of the risks involved to Plaintiffs and Decedent, but nevertheless proceeded with conscious indifference to the rights, safety and wellbeing of Plaintiffs and Decedent. TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11). As a result of Defendants' actions and/or omissions, Plaintiffs and Decedent pray Defendants be found grossly negligent, and Plaintiffs and Decedent be awarded punitive damages against Defendants at the jury's discretion.

## XII.
## JURY DEMAND

27. Plaintiffs demand trial by jury and submit the appropriate fee.

## XIII.
## CONDITIONS PRECEDENT

28. All conditions precedent have been performed or have occurred.

## XIV.
## RULE 193.7 NOTICE

29. Pursuant to Rule 193.7 of the TEXAS RULES OF CIVIL PROCEDURE, Plaintiffs hereby give actual notice to Defendants that any and all documents produced may be used against Defendants producing the documents at any pretrial proceedings and/or trial of this matter without the necessity of authenticating documents.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray they obtain judgment, jointly and severally, against Defendants, with interest on the judgment at the legal rate, pre-judgment interest, costs of court, attorneys' fees, and for such other further relief, both in law and equity, to which Plaintiffs and Decedent may show themselves justly entitled.

Respectfully submitted,

**W.D. Collins Law Firm, P.L.L.C.**

By: /s/ *Wayne D. Collins*
Wayne D. Collins
Texas Bar No. 00796384
wayne@wdcollins.co
Afton J. Parker
Texas Bar No. 24091349
afton@wdcollins.co
5535 Memorial Drive, Suite F, Box 1102
Houston, Texas 77007
Houston, Texas 77002
Phone: (281) 712-1197

**ATTORNEYS FOR PLAINTIFFS,
DONALD BRATTON AND
DONALD MALLARD, INDIVIDUALLY AND
AS REPRESENTATIVE OF THE ESTATE OF
JERVIE MALLARD, SR.**